**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| SAMSON RESOURCES COMPANY, | ) | Case No. CIV-09-0272-HE |
| *et al.,* | ) | Case No. CIV-09-0807-HE |
| | ) | Case No. CIV-09-0808-HE |
| | ) | Case No. CIV-09-0810-HE |
| Plaintiffs, | ) | Case No. CIV-09-0811-HE |
| | ) | Case No. CIV-09-0812-HE |
| vs. | ) | Case No. CIV-09-0813-HE |
| | ) | Case No. CIV-09-0814-HE |
| VALERO MARKETING AND | ) | Case No. CIV-09-0815-HE |
| SUPPLY COMPANY, *et al.*, | ) | Case No. CIV-09-0816-HE |
| | ) | Case No. CIV-09-0817-HE |
| Defendants. | ) | Case No. CIV-09-0818-HE |
| | ) | Case No. CIV-09-0819-HE |
| | ) | Case No. CIV-09-0820-HE |
| | ) | Case No. CIV-09-0827-HE |

**ORDER**

The captioned cases involve claims asserted by Samson Resources Company and its related companies ("Samson" or "plaintiffs") arising out of Samson's sale of crude oil between June 1, 2008, and July 21, 2008, to SemCrude, L.P. and its related entities ("SemGroup" or "debtor"). Among other things, SemGroup buys, sells and distributes crude oil, including resale to refiners and others. On July 22, 2008, SemGroup commenced Chapter 11 bankruptcy proceedings in the United States Bankruptcy Court for the District of Delaware ("Bankruptcy Court"). SemGroup's buying and selling activities resulted in it owing, and being owed, substantial sums for production it had bought and sold. As of the

date of bankruptcy, Samson had sold and delivered to SemGroup substantial amounts of crude oil for which it had not been paid.[1]

It is unnecessary to recount in detail the proceedings in the Bankruptcy Court. However, among the many matters addressed in those proceedings, Samson and other producers asserted claims based on state lien (or similar) statutes designed to assure that producers of oil and gas are paid for their product. The Bankruptcy Court addressed those claims insofar as the competing claims of SemGroup's bank lenders were concerned, but did not, at least initially, address such claims as they related to the producers' claims against downstream purchasers, i.e. those entities that SemGroup had, in turn, sold the producers' crude oil to.

In the meantime, Samson and other producers commenced litigation in several federal and state courts asserting statutory lien claims, based on the various state statutes, against the downstream purchasers. Certain of those cases have previously been transferred to the Bankruptcy Court for disposition, including several from federal district courts in Oklahoma.

The captioned cases (excepting Case No. CIV-09-0272) were commenced in various state district courts in Oklahoma and removed here by the defendants.[2] The defendants

---

[1] *Samson is the owner of working interests and royalty interests in oil and gas production in numerous wells in various states, including Oklahoma. It is also the operator of numerous wells, with the authority to market production from those wells for itself and for non-operating interest owners.*

[2] *Case No. CIV-09-0272 was commenced in this court in the first instance.*

("Downstream Purchasers" or "defendants" hereafter) are the various downstream purchasers alleged to have bought crude oil from SemGroup for which SemGroup has not paid Samson.[3]

Multiple motions are pending in these cases. Plaintiffs have moved to remand the previously removed cases to state court, arguing that federal bankruptcy jurisdiction — which was the basis for the removals — is not implicated by these cases. Further, they argue that even if these cases are determined to be related to the SemGroup bankruptcy, they are not core proceedings. As a result, plaintiffs argue that this court must abstain per 28 U.S.C. §1334(c)(2) and remand the cases to the various state courts.[4] Defendants have filed motions to dismiss the cases, based on the relationship to the disputes being litigated in the bankruptcy proceeding, and have alternatively moved to transfer the cases to the Bankruptcy Court. The various motions are at issue. The court heard oral argument on the motions on November 6, 2009.

On October 28, 2009, subsequent to the filing of the pending motions, the Bankruptcy Court confirmed a plan of reorganization for SemGroup. The nature and impact of that plan were among the matters addressed at the November 6 hearing.

---

[3] *The Downstream Purchaser defendants include Valero Marketing and Supply Company, National Cooperative Refinery Association, Husky Marketing and Supply Company, Chevron Texaco LP, Teppco Crude GP LLC, Cimarron Transmission Company, Interstate Petroleum Corporation, Merrill Lynch Pierce Fenner & Smith Inc., Occidental Energy Marketing Inc., Oasis Transportation and Marketing Corporation, Plains Marketing GP Inc., Plains Marketing LP, Shell Oil Company, BP Oil Supply Company, J. Aron & Company, Sunoco Logistic Partners LP, ConocoPhillips Company, and Coffeyville Resources Refining & Marketing LLC.*

[4]*One case, CIV-09-0827, also involves the question of whether removal to this court was timely.*

Subject Matter Jurisdiction

The threshold question is whether a basis exists for the removed cases being in federal court at all.[5] Pursuant to 28 U.S.C. §1452, and subject to certain exceptions not pertinent here, a party may remove a case to federal district court if that court would have jurisdiction under 28 U.S.C. §1334. Section 1334(c) confers original, but not exclusive, district court jurisdiction over civil proceedings "arising under title 11, or arising in or related to cases under title 11." For present purposes, the issue is whether these cases are "related to" the SemGroup bankruptcy.

The test for determining whether a civil proceeding is "related to" a bankruptcy proceeding is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." In re Gardner, 913 F.2d 1515, 1518 (10th Cir. 1990); Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). A substantial or certain impact is not necessary. As the Fifth Circuit noted: "[c]ertainty is unnecessary; an action is 'related to' bankruptcy if the outcome could alter, positively or negatively, the debtor's rights, liabilities, options, or freedom of action or could influence the administration of the bankruptcy estate." In re TXNB, 483 F.3d 292, 298 (5th Cir. 2007).

The court has little difficulty in concluding these cases are "related to" the SemGroup bankruptcy. To the extent that plaintiffs are successful in these suits, establishing the existence of valid liens and requiring the defendants to pay plaintiffs amounts they were

---

[5]*Jurisdiction in the case commenced in this court, CIV-09-0272, is based on diversity and is not disputed.*

otherwise owed by the debtor, the bankruptcy estate will necessarily be affected. Any downstream purchaser required to pay Samson for crude acquired through SemGroup will necessarily have the nature and/or amount of its claims against the debtor, or of the debtor's claims against it, altered. Depending on the circumstances — principally whether the particular defendant has already paid SemGroup for the crude involved or not — defendants could end up with larger claims against the debtor, based on theories of indemnity, breach of warranty of title, or the like.[6] Or, if the particular defendant has not already paid the debtor, then the amount owed by the defendant to the debtor would be reduced to the extent of any payments the defendant made to Samson or at least a defense would arise to any collection effort by the debtor. Under either scenario, the process of netting out the relationship between SemGroup and the Downstream Purchasers, now underway, would be impacted.[7] Further, the proof of plaintiffs' lien claims as to particular production will necessarily involve substantial tracing and other proof issues, likely resulting in substantial attorneys fees and other costs. Defendants argue they are entitled to recover those costs and

---

[6]*The court is unpersuaded that the confirmed plan's creation of "reserves" to fund certain claims materially changes this analysis. Based on the parties' description of the pertinent plan provisions, if the downstream producer claims ultimately exceed the reserved amount, an unsecured claim for the difference still remains. If the claims don't absorb the reserved amount, the excess would presumably revert to the debtor. Either way, the resolution of these claims continues to have some impact on the bankruptcy estate and proceeding.*

[7]*The court is unpersuaded by Samson's suggestion that the confirmed plan has resolved all these questions so as to preclude the disposition of these suits having any impact on the bankruptcy. The resolution of various issues via settlements incorporated into the plan may well alter the particular way in which the disposition of these cases would impact the bankruptcy, but does not eliminate the impact.*

fees from the debtor, based on their contractual undertakings with it. Such claims may also impact the overall claims position of the bankruptcy.

In any event, the court concludes the captioned cases are clearly "related to" the SemGroup bankruptcy so as to be a basis for removal to this court.[8]

Dismissal, Transfer, Abstention or Stay

The question of what to do next is more difficult. Plaintiffs argue these cases, even if determined to be "related to" the SemGroup bankruptcy, are not "core" proceedings and that abstention by this court is therefore required. 28 U.S.C. §1334(c)(2). On that basis, they seek remand to the various state courts from which the cases came. Defendants argue, for various reasons, that these cases <u>are</u> core proceedings and that any dispute in that regard is better resolved by the Bankruptcy Court, based on its greater familiarity with the bankruptcy proceeding and the circumstances out of which it arises. Further, they seek to have the various substantive issues resolved in the Bankruptcy Court, arguing that its familiarity with similar disputes involving producers and SemGroup's lenders makes it better positioned to efficiently resolve the issues.

The authorities are not consistent as to how a court should address the situation where both a motion for abstention under §1334(c)(2) and for transfer under 28 U.S.C. §1404 are

---

[8]*The question is closer as to Coffeyville Resources Refining and Marketing LLC, as the submissions indicate it was at least one level further "downstream." However, resolution of the claims against it could still have an impact on the bankruptcy based on at least some of the same legal theories, albeit more indirectly than is true as to the claims against other defendants.*

simultaneously pending.[9] In the circumstances of this case, the court concludes the most appropriate course is to transfer the case to the Bankruptcy Court for its determination of the abstention and, as appropriate, other issues, and that such a transfer is in the interests of justice. Various factors contribute to that determination.

Several cases posing nearly identical issues as those present here are already pending before the Bankruptcy Court. Transfer avoids the duplication of effort by litigants and witnesses and the risk of inconsistent rulings, while conserving judicial resources and promoting the efficient administration of the bankruptcy estate. The significant disputes between the parties as to the interpretation of the confirmed plan are a further indication that the issues presented in these cases would most appropriately be heard by the Bankruptcy Court.[10] That court is better positioned to evaluate the potential impact of these cases on the bankruptcy proceeding and the various interests and issues involved. Further, the question of whether abstention is proper under §1334(c)(2) is, in part, a discretionary determination of "whether allowing an action to proceed in state court will have any unfavorable effect on the administration of a bankruptcy case." In re Midgard Corp., 204 B.R. 764, 778 (10th Cir. B.A.P. 1997); Hohl v. Bastian, 279 B.R. 165, 177 (W.D. Pa. 2002) (the home court "is more familiar with the pending bankruptcy case and what may be required for its efficient

---

[9] *The Downstream Purchasers also move for transfer under § 1412. Having concluded that transfer is appropriate under § 1404(a), it is unnecessary to decide whether transfer would also be proper under § 1412.*

[10] *The parties have markedly different views of the nature and impact of the plan's provisions on these cases and the claims arising out of them.*

administration"). That is a judgment call the Bankruptcy Court is better positioned to make.

Taken together, these factors support the transfer of these cases to the Bankruptcy Court.

## Timeliness of Removal in CIV-09-0827-HE

In CIV-09-0827, Coffeyville's notice of removal was not timely filed in compliance with Fed. R. Bankr. Pro. 9027(a)(3). However, under Fed. R. Bankr. Pro. 9006, the court may permit the filing of the notice after the period allowed under Rule 9027 if the untimely filing was the result of "excusable neglect." The Supreme Court in Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd., 507 U.S. 380 (1993) interpreted Rule 9006 as giving courts the authority to extend deadlines even where the initial untimely filing was the result of negligence. The Court stated that whether neglect is "excusable" is an equitable determination in which courts should take into account "all relevant circumstances," including "the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* Here there is no evidence that Coffeyville has acted in bad faith and the delay did not seriously impact the proceedings. Further, remanding this case to state court would defeat the gains "in the interest of justice" made by transferring the other cases to Delaware by, among other things, creating the potential for inconsistent judgments and unnecessarily expending additional judicial resources. Looking to "all relevant circumstances," the court concludes

that Coffeyville's untimely filing was the result of "excusable neglect" and accepts the notice of removal.

<u>Conclusion</u>

The pending motions to dismiss or transfer are **GRANTED** to this extent: these cases are **TRANSFERRED** to the United States Bankruptcy Court for the District of Delaware for further proceedings. The court takes no action as to the pending motions to remand or as to other issues raised by the motions to dismiss or stay which are not determined by this order.

**IT IS SO ORDERED**.

Dated this 19th day of November, 2009.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE